**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

Todiea Robinson

      Plaintiff

v.                                                                        Civil Action No.
                                                                         4:19-cv-00200-ALM-KPJ

Healthcare Revenue
Recovery Group, LLC d/b/a
ARS Account Resolution Services

And;                                                                     Complaint

                                                                         and;

Experian Information Solutions, Inc.                                     Demand for Jury Trial

      Defendants

**<u>SECOND AMENDED COMPLAINT</u>**

    NOW COMES Plaintiff, Todiea Robinson**,** (hereafter the "Plaintiff") by and

through undersigned Counsel, whom through this complaint against the Defendants

alleges the following:

**<u>PRELIMINARY STATEMENT</u>**

    1.    This is an action for actual, statutory and punitive damages, costs, and

Attorneys' fees brought pursuant to 15 U.S.C. §1681 <u>et</u> <u>seq</u>. (Federal Fair Credit

Reporting Act) and for actual, statutory and punitive damages, costs, and Attorneys' fees pursuant to 15 U.S.C. §1692 (Federal Fair Debt Collection Act).

### JURISIDICTION AND VENUE

2.      Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p), 15 U.S.C. 1692k(d), and 28 U.S.C. §1331.

3.      Venue in this District is appropriate under 28 U.S.C. §1391(b)(1) because all defendants in this matter reside in the state of Texas as defined under 28 U.S.C. §1391. Furthermore, Experian Information Solutions, Inc.'s main office, from which the underlying disputes were processed, is in Allen, Texas which is in the Eastern District of Texas. **Healthcare Revenue Recovery Group, LLC d/b/a as ARS Account Resolution Services** is actively collecting debts in Texas, including those of Consumers located in the Eastern District of Texas.

### PARTIES

4.      Plaintiff is a natural person and citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1681a(c) and 15 U.S.C. §1692a (3).

5.      Defendant EXPERIAN INFORMATION SOLUTIONS, INC, (hereafter **EXPERIAN**) is a foreign For-Profit Corporation registered to do business and doing business in Texas.  Defendant is a "consumer reporting agency", as defined by 15 U.S.C §1681a(f) and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

6.       Defendant, **Healthcare Revenue Recovery Group d/b/a as ARS Account Resolution Services**, (hereinafter **ARS**), is a "debt collector", as defined by 15 U.S.C §1692a(6) and is engaged in the business with the purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Defendant is currently doing business in Texas.

## FACTUAL ALLEGATIONS

7.       Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

8.       EXPERIAN did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it has known or should have known the information was incorrect.

## PLAINTIFF'S DISPUTES

9.       Plaintiff disputed information regarding their ARS Acct# ****1357, ****0611 and ****0609 with and through EXPERIAN on 06/05/2017.

Plaintiff disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit report.  ARS and EXPERIAN did not provide a good faith investigation into the disputed account as required by the Fair Credit Reporting Act.  It should be noted that EXPERIAN uses the terms "Reported Since" and "First Reported" interchangeably on its reports depending on whether they are obtained online or through the mail. Therefore "Reported Since" and "First Reported" will be used interchangeably throughout this Complaint to refer to the same data field in Plaintiff's Experian credit report.

10.     The Plaintiff obtained a new credit report on 06/29/2017 displaying the results of their dispute of the ARS account.

11.     The Plaintiff received their result on the date listed above in the immediately preceding paragraph and not only did ARS and EXPERIAN not correct, modify or delete the disputed information on Plaintiff's Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiff's dispute. The changes for the Plaintiff were as follows:

A)      Date of Status Changed from 04/2017 to 06/2017;
B)      First Reported Changed from 04/2017 to 06/2017.

ARS is changing dates that should not be changed and EXPERIAN is allowing ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information.  ARS and EXPERIAN are penalizing Plaintiff for exercising their statutory right to dispute inaccurate information on their credit report.  ARS and EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

12.     EXPERIAN did not provide a good faith investigation into the ARS Acct# ****1357, ****0611 and ****0609.

13.     ARS did not provide a good faith investigation into the ARS Acct# ****1357, ****0611 and ****0609.

14.     ARS is re-aging Plaintiffs accounts by changing their Date of Status date, as well as, the First Reported dates.  EXPERIAN is allowing ARS to re-age the Date of Status date, as well as, the First Reported date.

15.     ARS is providing credit information that they know or should know is inaccurate and misleading.

4

16.     The Date of Status date on the Plaintiff's credit report should reflect the date when the accounts went uncollectible.

17.     The Date First Reported is the first time an account is reported with EXPERIAN, that date should never change.

18.     ARS is falsely and misleadingly reporting the character and/or legal status of these alleged debts by re-aging the accounts.

19.     The Date of Status date should be the day the debt was deemed uncollectable.  ARS changes those dates to re-age the accounts and EXPERIAN allows ARS to re-age the accounts by changing the Date of Status dates. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of Status" entry to mean exactly that")

20.     Re-aging accounts by changing the Date of Status dates are misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

21.     EXPERIAN should have discovered the misleading information if they would have provided a good faith reasonable investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit reports contained a "Date of Status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably

reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

22.     ARS also changed the Date "First Reported" and EXPERIAN allowed ARS to change the Date First Reported.  There is only one First Reported date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First Reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN.  EXPERIAN should know this date).; *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with ARS, the original creditor)

23.     These accounts are not only inaccurate but also misleading, which the Fifth Circuit has addressed.  The Fifth Circuit ruled that even a technical accuracy can be so misleading to the point that it is no longer accurate, *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988), a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely affect credit decisions"

24.     ARS did not conduct a good faith and reasonable investigation and did not delete or correct the false information but instead re-aged the dates on the accounts and EXPERIAN continues to report the inaccurate information.

25.     The reporting of this credit information on Plaintiffs credit reports negatively reflects upon the Plaintiffs, Plaintiffs' credit repayment history, Plaintiffs' financial responsibility as a debtor and Plaintiffs' credit worthiness.  This information

was furnished by ARS and reported by EXPERIAN, misrepresenting the payment history and/or status of Plaintiffs' accounts, and is currently being reported and is reflected on Plaintiffs' credit reports, resulting in lowering Plaintiffs' credit score and furthering Plaintiffs' damages.

26.     Plaintiff's credit reports and file have been obtained from credit reporting agencies and have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit, and the inaccurate information furnished by ARS and reported by EXPERIAN and is continuing to damage the Plaintiff's credit rating.

27.     As a result of conduct of EXPERIAN, Plaintiffs have suffered great physical, emotional and mental pain and anguish, all to Plaintiffs' great detriment and loss.

28.     As a result of the conduct of ARS, Plaintiffs have suffered actual damages all to Plaintiffs' great detriment and loss.

29.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

30.     At all times pertinent hereto, the conduct of the Defendants, as well as, that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

**CAUSES OF ACTION**

31.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

32.     This suit is based upon the Defendants violation of the Fair Credit Reporting Act. All causes of action were causes of the damages which Plaintiffs have suffered.

### *Count I: Fair Credit Reporting Act*

33.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

34.     This suit is brought against the Defendants as the damages made the basis of this suit were caused by their violation of the FCRA.  In all instances of violating the FCRA, Defendants did so willfully and/or negligently.  Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorney' s fees.

15 U.S.C. §1681n, "**Civil Liability for Willful Noncompliance**" reads:

(a)     Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1)     any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000

(2)     such amount of punitive damages as the court may allow; and

(3)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

And, 15 U.S.C. §1681o, "**Civil Liability for Negligent Noncompliance**" reads:

(a)      Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(1)      any actual damages sustained by the consumer as a result of the failure; and

(2)      in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

35.      EXPERIAN violated its duty under 15 U.S.C. §1681i(a)(1)(a) to conduct a good faith investigation into Plaintiff's notice of dispute.

36.      Plaintiffs disputed information regarding their ARS Acct# ****1357  with and through EXPERIAN, on the following dates on 06/05/2017;

Each of these Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit reports. ARS and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

37.      The Plaintiff obtained a new credit report on 06/29/2017 displaying the results of their dispute of the ARS account.

38.      The Plaintiff received their results on the date listed above in the immediately preceding paragraph and EXPERIAN not only failed to correct, modify or delete the disputed information on Plaintiff's  Experian Credit Report, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

PLAINTIFF      A)      Date of Status Changed from 04/2017 to 06/2017;
                B)      First Reported Changed from 04/2017 to 06/2017.

ARS is changing dates that should not be changed and EXPERIAN is allowing ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information.  ARS and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports.  ARS and EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

39.     The date of status date should be the day the debt was deemed uncollectable.  ARS changes those dates to re-age the accounts and EXPERIAN allows ARS to re-age the accounts by changing the date of status dates. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013)("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of status" entry to mean exactly that")

40.     Re-aging accounts by changing the date of status dates are misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

41.     EXPERIAN should have discovered the misleading information if they would have provided a good faith reasonable investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013)(Toliver's EXPERIAN credit reports contained a "Date of Status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.'" *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

42. ARS also changed the Date "First Reported" and EXPERIAN allowed ARS to change the Date First Reported. There is only one first reported date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First Reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with ARS, the original creditor)

43. If EXPERIAN would have conducted a reasonable and good faith investigation, they should have determined that ARS was changing dates that should not be changed and providing them with inaccurate data.

The section entitled "**Procedure in Case of Disputed Accuracy**" under 15 U.S.C. §1681i(a)(1)(A) reads:

    (a) Reinvestigations in case disputed information

      (1) Reinvestigation required

    (A) In general-- Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

The re-aging and manipulating of the dates artificially lowered Plaintiffs' credit scores more than if the accounts were being reported accurately, as well as, making the accounts seem more recently delinquent than they really are to potential creditors, causing them damage.

44.     ARS violated its duty under 15 U.S.C. §1681s-2(b) to conduct a good faith investigation into Plaintiff's notice of dispute and failing to delete or correct the inaccurate information.  After receiving a dispute notice from EXPERIAN, ARS did not conduct a complete, accurate or reasonable investigation into the disputed issue.  ARS did not give a good faith and reasonable investigation into the inaccurate information that was disputed by Plaintiffs' on the dates listed for each Plaintiff in Paragraph 36.  ARS should have discovered that the information they are providing the Credit Bureaus was not accurate.  ARS is re-aging the accounts of Plaintiffs to a date that is more recent than legally accurate.  For ARS to be liable under 15 U.S.C. §1681, Plaintiffs must dispute the accounts with EXPERIAN, EXPERIAN then contacts ARS regarding the dispute and ARS should conduct a good faith and reasonable "investigation" as well and then provides EXPERIAN with corrected credit data or delete the trade line.  The credit data that ARS is providing EXPERIAN is false, misleading and inaccurate and if ARS would have conducted a good faith, reasonable investigation, they would have discovered the inaccurate data.

45.     Plaintiff disputed information regarding their ARS Acct# ****1357 with and through EXPERIAN, on 06/05/2017.

Each of these Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit

reports. ARS and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

46. The Plaintiff's obtained new credit report on 06/29/2017 displaying the results of their dispute of the ARS account.

47. The Plaintiff received their results on the date listed above in the immediately preceding paragraph and not only did ARS and EXPERIAN not correct, modify or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiff's disputes. The changes for the Plaintiffs were as follows:

        A)  Date of Status Changed from 04/2017 to 06/2017;
        B)  First Reported Changed from 04/2017 to 06/2017.

ARS is changing dates that should not be changed and EXPERIAN is allowing ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information. ARS and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports. ARS and EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

48. The date of status date should be the day the debt was deemed uncollectable. ARS changes those dates to re-age the account and EXPERIAN allows ARS to re-age the account by changing the date of status dates. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013) ("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of status" entry to mean exactly that")

49.     Re-aging accounts by changing the date of status dates are misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013)("Date of status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

50.     EXPERIAN and ARS should have discovered the misleading information if they would have provided a good faith reasonable investigation. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit reports contained a "Date of status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

51.     ARS also changed the Date "First Reported" and EXPERIAN allowed ARS to change the Date First Reported.  There is only one first reported date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with ARS, the original creditor)

52.     If EXPERIAN would have conducted a reasonable good faith investigation, they should have determined that ARS was changing dates that should not be changed and providing the bureaus with inaccurate data.  The re-aging and

manipulating of the dates artificially lowered Plaintiffs' credit scores more than if the accounts were being reported accurately as well as making the accounts seem more recently delinquent than they really are to potential creditors, causing Plaintiffs damage.

The section entitled "Duty of Furnishers of Information Upon Notice of Dispute" under 15 U.S.C. §1681s-2(b) reads:

(1)     After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute <u>with</u> regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A)     conduct an investigation with respect to the disputed information:

(B)     review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)     report the results of the investigation to the consumer reporting agency;

(D)     <u>if</u> the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(E)     if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly

(i)          modify that item of information
(ii)         delete that item of information
(iii)        permanently block the reporting of that item of information

53.     EXPERIAN is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy. EXPERIAN is allowing ARS to re-age both the "Date of Status" and "First Reported" dates to reflect more recent dates than legally accurate.  If EXPERIAN had followed reasonable procedures to assure

maximum accuracy, EXPERIAN would not be allowing ARS to re-age two important data fields on Plaintiffs' credit files and even after the inaccurate reporting, EXPERIAN should have caught the inaccurate data once they were put on notice via Plaintiffs' dispute.

54.     Plaintiff disputed information regarding their ARS Acct# ****1357 with and through EXPERIAN, on 06/05/2017.

Each of these Plaintiffs disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit reports. ARS and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

55.     The Plaintiff obtained their new credit reports on 06/29/2017 displaying the results of their dispute of the ARS account.

56.     The Plaintiff received their results on the date listed above in the immediately preceding paragraph and not only did ARS and EXPERIAN not correct, modify or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

        A)  Date of Status Changed from 04/2017 to 06/2017;
        B)  First Reported Changed from 04/2017 to 06/2017.

ARS is changing dates that should not be changed and EXPERIAN is allowing ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information.  ARS and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports.  ARS and EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

57.     The date of status date should be the day the debt was deemed uncollectable.  ARS changes those dates to re-age the account and EXPERIAN allows ARS to re-age the account by changing the date of status dates. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013)("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of Status" entry to mean exactly that")

58.     Re-aging accounts by changing the date of status dates are misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D. Tex. 2013) ("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

59.     If EXPERIAN was following any, much less reasonable procedures to assure maximum accuracy, they would not allow such inaccurate reporting and once they were put on notice via a dispute, they should have fixed or corrected the false and misleading information.   EXPERIAN'S procedures are so bad or lacking that they continued to report obvious inaccurate data. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (Toliver's EXPERIAN credit reports contained a "Date of status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

60.     ARS also changed the Date "First Reported" and EXPERIAN allowed ARS to change the Date First Reported.  There is only one first reported date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013)

("First reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with ARS, the original creditor)

61.     If EXPERIAN would have followed reasonable procedures to assure maximum accuracy, EXPERIAN would not have allowed ARS to re-age and change the "Date of Status" and "First Reported" dates on Plaintiff's credit report just because Plaintiff exercised her statutory right to dispute her accounts.    The re-aging and manipulating of the dates artificially lowered Plaintiff's credit score more than if the accounts were being reported accurately as well as making the accounts seem more recently delinquent than they really are to potential creditors, causing her damage.

***Experian's standard is "maximum accuracy"***

Under 15 U.S.C. §1681e(b) reads:

    (b)   Accuracy of the Report

>     Whenever a consumer reporting agency prepares a consumer report it <u>shall</u> follow reasonable procedures as assure maximum possible accuracy of the information concerning the individual about whom the report relates

62.     Experian must meet a very high standard for reporting accurate information on Consumers' credit files/credit reports. The Fair Credit Reporting Act (FCRA) requires "maximum accuracy", when reporting credit information on consumer's credit reports. please see 15 USC §1681e(b); Please also see <u>Miller v. Trans Union, LLC</u>, 3:12-CV-1715, 2013 WL 5442008, at *5 (M.D. Pa. Aug. 14, 2013), <u>report and recommendation</u>

adopted in part, 3:12-CV-01715, 2013 WL 5442059 (M.D. Pa. Sept. 27, 2013)(consistent with the broad remedial goals of the Act, it has been held that information which may be technically accurate may still give rise to liability under the FCRA if that information is misleading, since § 1681e(b) imposes a standard of "maximum possible accuracy" on credit reporting services. Often, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic." *Cortez v. Trans Union,* LLC, 617 F.3d 688, 709 (3d Cir.2010).)

***Experian is required to conduct a reasonable investigation when consumers dispute credit information and delete information that is inaccurate, incomplete or cannot be verified, pursuant 15 U.S.C. §1681i***

63. Fair Credit Reporting Act requires Credit Reporting Agencies, such as Experian, to conduct a reasonable investigation when consumers dispute credit information.  Please see 15 U.S.C. §1681i(a)(1)(A).  After a Credit Reporting Agency conducts a good faith and reasonable investigation, if the information is found to be inaccurate, incomplete or cannot be verified, 15 U.S.C. §1681i requires the item to be deleted.  Please see Pinner v. Schmidt, 805 F.2d 1258, 1261–62 (5th Cir. 1986)(the FCRA imposes a duty upon reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material. 15 U.S.C.A. § 1681i.).

64. When an account is disputed by a consumer, Experian generates an "ACDV", which contains data and information on a consumer that is already "on profile" with Experian.   The other half of the ACDV is blank, allowing the data furnisher to change/edit/modify/delete or to continue report the exact same information that Experian already has "on profile".  After Experian receives the dispute from the consumer,

Experian will send the ACDV, with Experian's "on profile" information to the data furnisher to review.  Once the data furnish receives the ACDV, the data furnisher will fill out their side, instructing how to report the account, and then they will send back to Experian.

***Experian has admitted they do not vet the information for accuracy***

65. Experian has admitted in the past that they do not vet the information for accuracy and will do nothing more than to replicate the information that the data furnisher provides to them.

***Parroting the information that Experian receives from the data furnisher is a "willful" violation***

66.    As argued above, Experian made shocking confessions that all they do is parrot the exact same information that the data furnishers give them. This is exactly what Experian did when Plaintiff disputed the accounts at issue in this litigation with Experian. That is not an investigation, it's a verification.  The case law is clear on this issue and it violates the Fair Credit Reporting Act; Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 463 (E.D. Pa. 2010)(It was not unreasonable for the jury to conclude that Trans Union **willfully or recklessly violated the FCRA by doing nothing more than "parroting information"** it received from ACCB. *Cushman,* 115 F.3d at 225 ("[A] 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Campbell v. Chase Manhattan Bank, USA, N.A.,* No. 02–3489, 2005 WL 1514221, at *16 (D.N.J. June 27, 2005) **(parroting information received from original source may be considered a willful violation of the FCRA).** Thus, there is no basis to disturb the jury's finding that Trans Union willfully or recklessly failed to comply with the FCRA.); please also see

<u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 225 (3d Cir. 1997)(The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.); please also see <u>Pourfard v. Equifax Info. Services LLC</u>, CIV 07-854-AA, 2010 WL 55446, at *4 (D. Or. Jan. 7, 2010)(However, "the caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information. The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources." *Centuori v. Experian Info. Solutions, Inc.,* 431 F.Supp.2d 1002, 1008 (D.Ariz.2006) (citing *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3rd Cir.1997)). "In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Cushman,* 115 F.3d at 224 (internal citation omitted). In *Cushman,* the court expressly rejected the identical argument made here by defendant: the consumer must resolve the problem with the creditor. *Id.* Rather, "[t]he statute places the burden of investigation squarely on" the consumer reporting agency. *Id.)*

**Experian has the burden of investigating disputes**

70.     Experian is trying to shift the burden of the investigation to the data furnishers "because it is their data", which directly contradicts the FCRA. Please see <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 225 (3d Cir. 1997)(We also agree with the cogent observation by the Fifth Circuit that the plain language of the statute places the burden of reinvestigation on the consumer reporting agency. *See Stevenson,* 987 F.2d at

293. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.); please also see Sampson v. Equifax Info. Services, LLC, CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005)(To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997). "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.; see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D.Fla.1985).); Please also see Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993)(In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).)

***Fifth Circuit:  Experian has the responsibility for evaluation the accuracy of the information obtained from ARS***

71. The Fifth Circuit has ruled that Experian has the responsibility to evaluate the information that the date furnisher gives them. Please see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 293 (5th Cir. 1993)(In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).)

72. As argued above, Experian made shocking confessions that they will report any

information that data furnishers provide them because they have a "signed a contract" with them.  That is the equivalent of putting the fox in the hen house. In Experian's own words, they have no oversight into the accuracy of the data they are receiving and reporting. To make matters worse, Experian will not correct/modify or delete the inaccurate information once the consumer disputes it if the data furnisher instructs them not to. To quote Experian's Representative, "Well, the data furnisher is the best entity to know what is correct about their information that they're reporting, so the data furnisher, if they want to change it, that would be up to them.  We don't tell a data furnisher what they're supposed to report to us." Please see Exhibit 35 at p.2.

***Experian is responsible for the information in their files***

73.    Experian has admitted that they "don't tell a data furnisher what they're supposed to report to us".  Experian is responsible for the information in their files. The plain language of the FCRA places the burden of reinvestigation on the consumer reporting agency.  *Please see Cortez v. Trans Union, LLC*, 617 F.3d 688, 710-11 (3d Cir. 2010)(**Trans Union remains responsible for the accuracy in its reports under the**

**FCRA** and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here. *See Philbin,* 101 F.3d at 966.); please also see <u>Saenz v. Trans Union, LLC,</u> 621 F. Supp. 2d 1074, 1083 (D. Or. 2007)(The plain language of the [FCRA] places the burden of reinvestigation on the consumer reporting agency. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. **Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.** In addition to these observations, we note that [Trans Union]'s reading of § 1681i(a) would require it only to replicate the efforts it must undertake in order to comply with § 1681e(b). Such a reading would render the two sections largely duplicative of each other. We strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.); please also see *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010)(**Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party.**

**Thus, Trans Union's argument that it does not control the accuracy of the SDN List is as misleading as the information it provided about Cortez**.).

### *ACDV not good enough to "investigate" consumer's disputes*

74. When Plaintiff disputed the ARS account with Experian, Experian didn't do anything other than to send a computerized form called an ACDV over to ARS. The ACDV showed the information that Experian had "on profile" and asked ARS to either verify the information, edit/modify or to remove/delete the account as ARS deems necessary. Experian knew, because of their contract with ARS, that they would report anything ARS provides to them.

75. Experian has already had a ruling against them for not going beyond the ACDV regarding this exact same issue as being alleged in this case.  In *Toliver*, Experian changed Toliver's First Reported and Date of Status each time she disputed the account. Please see Toliver v. Experian Info. Sols., Inc., 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013)(Going beyond LVNV's response to the ACDVs in this case may not have involved much more than comparing the date to Experian's own records or clarifying the meaning of the "First reported" entry to LVNV and asking for a response that accurately reflected the date that the account was first reported to Experian. The evidence produced suggests that LVNV updated the "First reported" entry at least as often as Toliver disputed the accuracy of the LVNV account.  A reasonable jury could conclude that Experian should have known that an account being disputed by the consumer could not have been "First reported" on the date that the creditor replied to its ACDVs. Thus, Experian is not entitled to summary judgment on Toliver's § 1681i(a) claims regarding the "First reported" entry.).

76.   The Fifth Circuit, District Courts in Texas as well as federal courts across the country has ruled that relying on the ACDV is not an investigation.  Please see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 293 **(5th Cir. 1993) (TRW relied solely on the CDVs despite the number of disputed accounts and the allegations of fraud. TRW also relied on the subscribers to tell TRW whether to delete information from Stevenson's report. In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.** *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).); please also see <u>Pace v. Experian Info. Sols. Inc.</u>, CIV.A. 2:03-CV-45, 2004 WL 1057795, at *2 (E.D. Tex. Apr. 28, 2004)(**When a credit reporting agency receives notice of inaccurate information from a consumer, § 1681i(a) imposes a duty on the agency to reinvestigate the accuracy of the information. In this circuit, the law is clear that "in a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Stevenson v. TRW, Inc.,* **987 F.2d 288 (5th Cir.1998)(affirming finding of negligence where credit reporting agency relied exclusively on consumer dispute verification forms (CDVs) when discharging its reinvestigation duties**); please also see <u>Zala v. Trans Union, LLC</u>, CIV. A. 3:99-CV-0399, 2001 WL 210693, at *5 **(N.D. Tex. Jan. 17, 2001)(In** *Stevenson v. TRW Inc.,* **987 F.2d 288, 293 (5th Cir.1993), the Fifth Circuit held that a consumer reporting agency that relied solely on subscribers' written consumer dispute verification forms rather than contacting the subscribers directly was negligent.** The court noted that even though the credit agency was unable to verify some disputed

accounts, it failed to remove those disputed accounts from the credit report. *Id.* **Rejecting as insufficient the credit agency's practice of relying on the consumer to resolve the problem with the creditor, the court stated that "[i]n a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Id.* ). Courts across the country have also ruled that relying only on ACDVs does not constitute an investigation in to consumer's disputes. please also see <u>White v. Trans Union, LLC</u>, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006)(TransUnion **seeks to deflect responsibility for this inaccuracy to the creditors** upon whom it relies for information and falls back on its assertion that **"a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account**." Def.'s Mot. to Dismiss Pls.' Second Am. Consolidated Class Comp. 13:12-14. **This hardly suffices to establish, as a matter of law, that a "reasonable reinvestigation" amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source**. *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993); *McKeown v. Sears Roebuck & Co.,* 335 F.Supp.2d 917, 930 (W.D.Wis.2004); please also see <u>Dixon-Rollins v. Experian Info. Sols., Inc.</u>, 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010)(**the Third Circuit instructed**

**Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information.** *Cushman,* 115 F.3d at 225. Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation, *see e.g., Krajewski,* 557 F.Supp.2d at 616; *Crane,* 282 F.Supp.2d at 320; *Lawrence,* 296 F.Supp.2d at 589; *Saenz v. Trans Union, LLC,* 621 F.Supp.2d 1074, 1083 (D.Or.2007) (**Trans Union must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.,* No 05–5468, 2007 WL 1309542, at *2 (W.D.Wash. May 7, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. *See, e.g., Mullins v. Equifax Info. Servs., LLC,* No. 05–888, 2007 WL 2471080, at *7 n. 11 (E.D.Va. Aug. 27, 2007).[7] Thus, because Trans Union has been **warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.,* 399 F.3d 224, 232 (3d Cir.2005) (recidivist behavior relates to defendant's conduct as to non-parties). **Trans Union's refusal to modify its reinvestigation procedures and insistence on mimicking the original sources' responses supports the conclusion that punitive damages are necessary to deter future violations**. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that **strong medicine is required to cure the defendant's disrespect for the law**." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Thus, **because Trans Union has continued to disregard its obligations despite clear judicial rulings and**

**warnings, its conduct is more reprehensible than that of a first- time offender, requiring more severe punishment**. *Id.* at 577, 116 S.Ct. 1589.); please see <u>Grigoryan v. Experian Info. Sols., Inc.</u>, 84 F. Supp. 3d 1044, 1074–75 (C.D. Cal. 2014)(It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a "reasonable investigation" took place once a consumer disputes the accuracy of the furnisher's information. See *Bradshaw v. BAC Home Loans Servicing, LP,* 816 F.Supp.2d 1066, 1073–74 (D.Or.2011) ("Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation"); *White v. Trans \*1075 Union, LLC,* 462 F.Supp.2d 1079, 1083 (C.D.Cal.2006) ("TransUnion seeks to deflect responsibility for this inaccuracy to the creditors upon whom it relies for information and falls back on its assertion that 'a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account.' ... This hardly suffices to establish, as a matter of law, that a 'reasonable reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source"); see also *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources"); *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1230–31 (D.N.M.2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed).

*Willful*

77. To prove willful, Plaintiff just has to show that Experian was reckless, malice is

not needed. please see <u>Hedlund v. Hooters of Houston</u>, CIV.A.2:08-CV-45, 2008 WL 2065852, at *3 (N.D. Tex. May 13, 2008)(**The Supreme Court has held that "willful", as used in the FCRA, includes a knowing or reckless disregard of the law.** *Safeco Ins. Co. of America v. Burr,* --- U.S. ----, ----, 127 S.Ct. 2201, 2208, 167 L.Ed.2d 1045 (2007). Plaintiffs have met their burden under Rule 12(b)(6). ); please also see <u>Cousin v. Trans Union Corp.</u>, 246 F.3d 359 (5th Cir. 2001)(Malice or evil motive need not be established for a punitive damages award under Fair Credit Reporting Act (FCRA), but the violation must have been willful. Consumer Credit Protection Act, § 616(a)(2), as amended, 15 U.S.C.A. § 1681n(a)(2).)

78.     With Experian's shocking confession of their over the top failure to comply with any part of the FCRA and their flagrant systematic disregard to the federal laws that Congress created to assure that consumers have accurate credit reports is as intentional as it gets and at a bare minimum "reckless".  Experian completely lacks any resemblance of having procedures and policies that would assure any form accuracy, much less their required standard of "maximum accuracy".  Experian willfully violated their statutory obligation to provide a reasonable investigation in to Plaintiffs'' disputes, pursuant to 15 U.S.C. §1681i. Experian willfully violated their statutory duty to follow procedures to assure "maximum accuracy" as well as their failure to conduct a reasonable investigation.

### Fifth Circuit Standard of Inaccuracy

79. The Fifth Circuit has ruled directly on what can make a credit entry inaccurate.

The Fifth Circuit standard of an inaccurate credit entry is that it can be "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions". It is interesting to note that the Fifth Circuit standard is that if it "can" adversely affect credit decisions, not that it did adversely affect credit decisions.  *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895-96 (5th Cir. 1988) (A credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions".); please also see Saunders v. Branch Banking & Tr. Co. Of VA, 526 F.3d 142, 148–49 (4th Cir. 2008)(Of particular relevance here, in *Dalton* we addressed the duty of a CRA to report accurately pursuant to § 1681e. 257 F.3d at 415. We held that a report "is inaccurate" not only "when it is 'patently incorrect' " but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Id.* (quoting *Sepulvado v. CSC Credit Servs.,* 158 F.3d 890, 895 (5th Cir.1998)). Thus, we held that a consumer report that contains technically accurate information may be deemed "inaccurate" if the statement is presented in such a way that it creates a misleading impression. *See id.* at 415–16. The Fifth Circuit reached a similar conclusion, affirming a jury verdict finding a CRA's report inaccurate when the report described an account as "[l]itigation [p]ending," because the report omitted the fact that the consumer, as opposed

to the creditor/furnisher, had *149 brought suit. *See Pinner v. Schmidt,* 805 F.2d 1258, 1262–63 (5th Cir.1986).)).

80.     Experian is reporting first reported dates and date of status dates that they know are not only false and inaccurate on their face, but that are also misleading.

81.     There isn't any way that Experian's reporting of re-aged dates could ever be deemed Accurate, using ether the patently inaccurate or misleading standard. Experian has been on notice since 2013 of their reporting problems.

82.     Experian has been on notice of the alleged facts since *Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013).

83.     Experian cannot deny that they allowed the first reported and the date of status dates be improperly and illegally re-age, just because the Plaintiffs' disputed their accounts. Furthermore, Experian is even letting ARS change the Dates of Status and Dates First Reported in the months that Plaintiff has not disputed the ARS account by and through Experian. This means Experian has no reasonable procedure in place to prevent a debt collector from incorrectly changing consumers' Dates of Status and First Reported Dates on a monthly basis to affect consumers' credit scores negatively. This is far from a reasonable procedure to ensure maximum accuracy.

### *Count II: Fair Debt Collection Act*

Plaintiff incorporates the foregoing paragraphs as though the same were set

forth at length herein.

84.     ARS violated 15 U.S.C. §1692e(2)(A) by falsely representing the character and/or the legal status of the alleged debt.  ARS re-aged both the "date of status" and "first reported" dates to more recent dates than legally accurate.  By re-aging

both dates, ARS violated 15 U.S.C. §1692e(2)(A). The re-aging and manipulating of the
dates is falsely representing the character of the debt by re-aging the debt and making it
look much more recent than it really is.  The more recent the debt the more it damages
credit scores, severely damaging Plaintiff's credit score.  Potential lenders look at how
recent delinquencies are on a credit report when evaluating loan risks, the more recent the
delinquency the higher the financial risk. The re-aging of the accounts makes the older
accounts look new again and thus at a higher risk for default.

15 U.S.C. §1692e **"False or Misleading Representation"**

A debt collector may not use any false, deceptive, or misleading
representation or means in connection with the collection of any debt. Without
limiting the general application of the foregoing, the following conduct is a
violation of this section:

**(2)** The false representation of—
**(A)** the character, amount, or legal status of any debt

85.    ARS violated 15 U.S.C. §1692e(8) by reporting credit information to
EXPERIAN that they knew or should have known to be false. ARS reported information
that they know or should have known to be false when they re-aged both the date of
status and first reported dates on Plaintiff's credit report.

86.    Plaintiff disputed information regarding their ARS Acct# ****1357 with
and through EXPERIAN on 06/05/2017.

Each of these Plaintiffs disputed the inaccurate "Date of Status" and "First
Reported/Reported Since" dates that were being reported on their EXPERIAN credit
reports. ARS and EXPERIAN did not provide a good faith investigation into the disputed
accounts as required by the Fair Credit Reporting Act.

87.     The Plaintiff obtained a new credit report on  displaying the results of their dispute of the ARS account.

88.     The Plaintiff received their results on the date listed above in the immediately preceding paragraph and not only did ARS and EXPERIAN not correct, modify or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

   A)     Date of Status Changed from 04/2017 to 06/2017;
   B)     First Reported Changed from 04/2017 to 06/2017.

        ARS is changing dates that should not be changed and EXPERIAN is allowing ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit information.  ARS and EXPERIAN are penalizing Plaintiffs for exercising their statutory right to dispute inaccurate information on their credit reports.  ARS and EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

89.     The date of status date should be the day the debt was deemed uncollectable.  ARS changes those dates to re-age the account and EXPERIAN allows ARS to re-age the account by changing the date of status dates. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013)("'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off." A creditor presented with Toliver's EXPERIAN credit report could reasonably interpret the "Date of status" entry to mean exactly that")

90.     Re-aging accounts by changing the date of status dates are misleading. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D.

Tex. 2013)("Date of Status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")

91.     EXPERIAN and ARS should have discovered the misleading information if they would have provided a good faith reasonable investigation and corrected the information.   They are communicating information they know or should know to be inaccurate. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013)(Toliver's EXPERIAN credit reports contained a "Date of Status" that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68 (quoting *Cushman,* 115 F.3d at 226).)

92.     ARS also changed the Date "First Reported" and EXPERIAN allowed ARS to change the Date First Reported.   There is only one first reported date. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013) ("First reported" entry is meant to reflect the date that the creditor first reported the account to EXPERIAN. EXPERIAN should know this date).; *Please also see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Sears, the original creditor)

93.     The re-aging and manipulating of the dates artificially lowered Plaintiff's credit score more than if the accounts were being reported accurately as well as making the accounts seem more recently delinquent than they really are to potential creditors, causing her damage.

15 U.S.C. §1692e **"False or Misleading Representation"** reads:

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

94.     ARS violated Federal Statutes 15 U.S.C. §1692e(10) and 15 U.S.C §1692f.  Defendant falsely and deceptively re-aged the alleged accounts on Plaintiff's credit report. ARS intentionally violated 15 U.S.C. §1692 by false and deceptively re-aged accounts in order to collect a debt.  By re-aging dates, ARS has intentionally violated 15 U.S.C. §1692 by false and deceptively re-aged accounts in order to collect a debt, which is an unfair and unconscionable act. The more recent the delinquency, the more it negatively effects credit ratings and scores.

95.     Plaintiff disputed information regarding their ARS Acct# ****1357 with and through EXPERIAN on 06/05/2017.

Plaintiff disputed the inaccurate "Date of Status" and "First Reported/Reported Since" dates that were being reported on their EXPERIAN credit report. ARS and EXPERIAN did not provide a good faith investigation into the disputed accounts as required by the Fair Credit Reporting Act.

96.     The Plaintiff obtained a new credit report from Experian on displaying the results of their dispute of the ARS account.

97.     The Plaintiff received their results on the dates listed above in paragraph 74 and not only did ARS and EXPERIAN not correct, modify or delete the disputed information on Plaintiffs' Experian Credit Reports, but they changed the "Date of Status" and the "First Reported" dates due to Plaintiffs' disputes. The changes for the Plaintiffs were as follows:

Date of Status Changed from 04/2017 to 06/2017;
First Reported Changed from 04/2017 to 06/2017.

 ARS is changing dates that should not be changed and EXPERIAN is allowing

ARS to change dates based on Plaintiffs' statutory right to dispute inaccurate credit

information.  ARS and EXPERIAN are penalizing Plaintiffs for exercising their

statutory right to dispute inaccurate information on their credit reports.  ARS and

EXPERIAN are re-aging Plaintiffs' ARS accounts with every dispute.

98.     The date of status date should be the day the debt was deemed

uncollectable.  ARS changes those dates to re-age the account and EXPERIAN allows

ARS to re-age the account by changing the date of status dates. *Please see Toliver v.*

*EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013)("'Date of

Status' is a date that should mark the day a debt was deemed uncollectible and thus

charged off." A creditor presented with Toliver's EXPERIAN credit report could

reasonably interpret the "Date of Status" entry to mean exactly that")

99.     Re-aging accounts by changing the date of status dates are misleading.

*Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 727 (S.D.

Tex. 2013)("Date of Status" entry was "misleading in such a way and to such an extent

that it can be expected to adversely affect credit decisions.")

100.     ARS is re-aging their accounts to hurt Plaintiffs' credit which is an unfair,

unconscionable false and misleading debt collection methods in an attempt to collect and

alleged debt. *Please see Toliver v. EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707,

732 (S.D. Tex. 2013)(Toliver's EXPERIAN credit reports contained a "Date of Status"

that a reasonable jury could find misleading, and EXPERIAN "could have uncovered the

inaccuracy 'if it had reasonably reinvestigated the matter.' " *DeAndrade,* 523 F.3d at 68

(quoting *Cushman,* 115 F.3d at 226).)

101.     ARS also changed the Date "First Reported" and EXPERIAN allowed

ARS to change the First Reported Date.  There is only one first reported date. *Please see*

*Toliver v. EXPERIAN Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 731 (S.D. Tex. 2013)

("First reported" entry is meant to reflect the date that the creditor first reported the

account to EXPERIAN. EXPERIAN should know this date.); *Please also see Toliver v.*

*EXPERIAN Info. Solutions, Inc.,* 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013) (the "First

reported" entry should reflect either the date that LVNV first reported the account on her

credit report or the date that the debt was first reported as a major delinquency with

Sears, the original creditor)

102.     The re-aging and manipulating of the dates artificially lowered Plaintiffs'

credit scores more than if the accounts were being reported accurately as well as making

the accounts seem more recently delinquent than they really are to potential creditors,

causing plaintiffs damage.  The conduct of ARS through the re-aging of accounts and

violating multiple Fair Debt Collection laws is an unfair and unconscionable means to

collect an alleged debt.

15 U.S.C. §1692e **"False or Misleading Representation"** reads:

> (10) The use of any false representation or deceptive means to collect
> or attempt to collect any debt or to obtain information concerning a
> consumer.

And;

The section entitled **"Unfair practices"** under 15 U.S.C §1692f reads;

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

103.     The conduct of EXPERIAN and ARS were a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as such other relief, permitted by law.

104.     As a result of Defendants' conduct, Plaintiff has suffered

emotional and mental pain and anguish, and all to Plaintiffs great detriment and loss.

105.     As a result of Defendants' conduct, Plaintiffs have suffered actual damages are all to Plaintiffs great detriment and loss.

106.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

107.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

### **DEMAND FOR JURY TRIAL**

108.  Plaintiffs demand trial by jury.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs seek judgment in Plaintiffs' favor and damages against the Defendants EXPERIAN and ARS, based on the following requested relief:

    (a)    Actual damages pursuant to 15 U.S.C. §1681

    (b)    Statutory damages pursuant to 15 U.S.C. §1681

    (c)    Punitive damages pursuant to 15 U.S.C. §1681

    (d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n,

§1681o

    (e)Such other and further relief as may be necessary, just and proper.

Dated:  May 15, 2019

Respectfully submitted,

 /s/ Dennis McCarty
Dennis McCarty
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
Federal Bar No. 993800
McCarty & Raburn, A Consumer Law Firm, PLLC
2931 Ridge Rd, Suite 101 #504
Rockwall, TX 75032
dennismccartylaw@gmail.com
Telephone: 817-704-3375
Fax (817) 887-5069

/s/Jonathan Raburn
Jonathan Raburn
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 28728
McCarty & Raburn, A Consumer Law Firm, PLLC
2931 Ridge Rd, Suite 101 #504
Rockwall, TX 75032
jonathan@geauxlaw.com
Telephone: 318-412-2777

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys on record:

Date Signed May 15, 2019

/s/ Dennis McCarty
Dennis McCarty